UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.R.G.A.,<br><br>              Petitioner,<br><br>     v.<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>              Respondents. | Case No. 2:26-cv-02449-FLA (DSR)<br><br>**ORDER DENYING PETITIONER'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. 6]** |

## **RULING**

On March 6, 2026, Petitioner H.R.G.A. ("Petitioner") filed a Petition for Writ of *Habeas Corpus* ("Petition"), pursuant to 28 U.S.C. § 2241, challenging his detention as a violation of the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and applicable regulations.  Dkt. 1 ("Pet.").[1]

On March 9, 2026, Petitioner filed the subject *Ex Parte* Application for Temporary Restraining Order ("Application"), requesting the court "direct[]

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

Respondents to release Petitioner from their custody until he is afforded notice and a hearing before a neutral adjudicator to determine whether the government can prove by clear and convincing evidence that Petitioner is a flight risk or a danger, as required by the Due Process clause of the Fifth Amendment and Administrative Procedure Act." Dkt. 6 ("Appl.") at 2. Respondents oppose the Application. Dkt. 8 ("Opp'n"). The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.[2]

For the reasons stated herein, the Application is DENIED.

## BACKGROUND

Petitioner is a citizen of the Republic of Guatemala ("Guatemala"), who entered the United States in approximately 1986, when he was around 13 years old. Pet. ¶¶ 7, 17. As a teenager, Petitioner dropped out of high school and joined a gang. *Id.* ¶ 18. In 1996, Petitioner was convicted of carjacking, kidnapping, and rape, and sentenced to 31 years and 8 months in state prison. *Id.* ¶ 18. Petitioner was released from prison on October 3, 2022. *Id.* ¶ 19; Dkt. 6-1 ("Sun Decl.") at 41.

That same day, United States Immigration and Customs Enforcement ("ICE") arrested Petitioner and issued a final administrative removal order pursuant to 8 U.S.C. § 1231(a)(6) ("§ 1231(a)(6)"), finding Petitioner was deportable due to his prior commission of an aggravated felony.[3] Pet. ¶ 20. On May 16, 2023, an Immigration Judge granted Petitioner release on bond after determining he was neither a flight risk nor a danger to the community, and he was released from immigration detention the following day. *Id.* ¶ 27; Sun Decl. at 12. On August 11, 2025,

---

[2] Petitioner filed a First Amended Petition for Writ of *Habeas Corpus* ("FAP") on March 27, 2026, after all briefing was complete on the subject Application. Dkt. 11. The parties have not requested the court consider the FAP in connection with the subject Application.

[3] "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii) ("§ 1227(a)(2)(A)(iii)").

Petitioner filed a Form I-589, seeking deferral of removal under the Convention Against Torture. *Id.* ¶ 28.

On August 13, 2025, Petitioner was arrested in Los Angeles and charged with two counts of assault with a deadly weapon, one count of making criminal threats, and one count of failure to register as a sex offender (as required under California Penal Code § 290). Pet. ¶ 32. On January 2, 2026, the California state court dismissed the failure to register count on the State's motion, and the State amended the criminal complaint to replace one count of assault with a deadly weapon with one count of assault by means likely to produce great bodily injury. *Id.* ¶ 33. Petitioner posted bail and was released from state custody on January 3, 2026. *Id.* On January 16, 2026, Petitioner was arraigned and pleaded not guilty to the three remaining counts charged. *Id.*

On March 6, 2026, Petitioner was re-arrested and detained by ICE when he appeared for a routine check-in appointment at ICE's Los Angeles Field Office. Pet. ¶ 37; Dkt. 8-1. The Notice of Revocation of Release ("Notice of Revocation") states Petitioner's release was revoked, pursuant to 8 C.F.R. § 241.4(*l*) ("§ 241.4(*l*)"), for violation of a condition of release: "Arrested for Robbery and Failing to Register as a Sex Offender." Dkt. 8-1 at 1. The parties dispute whether ICE provided Petitioner with a copy of the Notice of Revocation and informal interview, as required under § 241.4(*l*). Opp'n at 3; Dkt. 8 ("Reply") at 3.

## DISCUSSION

### I.   Legal Standard

#### A.   Temporary Restraining Orders and Preliminary Injunctions

"An injunction is a matter of equitable discretion" and "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 32 (2008). "[T]he usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v.*

3

*Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963).  "The status quo is the last uncontested status which preceded the pending controversy."  *Id.* at 809 (citation and quotation marks omitted).

A petitioner seeking a preliminary injunction or temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20. Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the [petitioner] can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).  A "serious question" is "one as to which the moving party has a fair chance of success on the merits."  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (quotation marks and citation omitted).

The Ninth Circuit follows a "sliding scale" approach to the four preliminary injunction elements, such that "a stronger showing of one element may offset a weaker showing of another, as long as plaintiffs establish that irreparable harm is likely."  *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (cleaned up).  The first factor, "likelihood of success on the merits[,] is the most import factor—and even more so when a constitutional injury is alleged."  *Matsumoto v. Labrador*, 122 F.4th 787, 804 (9th Cir. 2024).  "If a movant makes a sufficient demonstration on all four *Winter* factors …, a court must not shrink from its obligation to enforce his constitutional rights, regardless of the constitutional right at issue."  *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023) (cleaned up).

A writ of *habeas corpus* may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional

function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474 (2004). The petitioner "bears the burden of demonstrating that he is in custody in violation of the Constitution or laws or treaties of the United States." *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1159 (S.D. Cal. Oct. 1, 2025) (cleaned up).

**B.      Detention and Removal of Aliens under the INA**

Section 1231(a) governs the detention, release, and removal of aliens ordered removed and states in relevant part:

**(1) Removal period**

**(A) In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B) Beginning of period**

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C) Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

**(2) Detention**

    **(A) In general**

    During the removal period, the Attorney General shall detain the alien.  Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under [8 U.S.C. § 1182(a)(2) or (a)(3)(B)] or deportable under [8 U.S.C. § 1227(a)(2) or (a)(4)(B)].  …

**(3) Supervision after 90-day period**

    If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.  …

**(6) Inadmissible or criminal aliens**

    An alien ordered removed who is inadmissible under [§ 1182], removable under [§ 1227(a)(1)(C), (a)(2), or (a)(4)] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(1), (2)(A), (3), (6).

Section 241.4 governs the "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period," and applies to Petitioner based on his prior conviction for an aggravated felony.  *See* 8 C.F.R. § 241.4(a).  The revocation of such alien's release is governed by § 241.4(*l*), which provides in relevant part:

(1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody.  …  Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

(2) Determination by the Service.  The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section.  A district director may also revoke release of an alien when, in the district

6

director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.  Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

> (i) The purposes of release have been served;

> (ii) The alien violates any condition of release;

> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(1), (2).[4]

## II.   Analysis

Petitioner contends "the Due Process Clause of the Constitution makes it unlawful for Respondents to re-detain him without first providing a pre-deprivation hearing before a neutral adjudicator."  Appl. at 20.  While Petitioner acknowledges "ICE may re-arrest a noncitizen who had been previously released on bond … after a material change in circumstances," *id.* at 21 (citing *e.g.*, *Matter of Sugay*, 17 I & N Dec. 637, 640 (BIA 1981)), he argues that "District Courts have repeatedly found that a pre-deprivation hearing is required even for noncitizens with new arrests since release on bond," *id.* at 22 (citing *e.g.*, *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1033 (N.D. Cal. 2025)).  Petitioner, thus, "requests the [c]ourt grant injunctive relief, order Respondents to immediately release Petitioner, and enjoin Respondents from re-arresting him unless and until he is provided notice and a hearing before a

---

[4] "All references to the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, and the district director in this section shall be deemed to include any person or persons (including a committee) designated in writing by the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, or the district director to exercise powers under this section."  8 C.F.R. § 241.4(c)(4).  "Service means the U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and/or U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears."  8 C.F.R. § 1.2.

neutral adjudicator where the government has the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger." *Id.* at 41.

Respondents argue Petitioner's criminal charges constitute materially changed circumstances that render his re-arrest and detention proper, and that Petitioner is not entitled to the injunctive relief requested because he cannot demonstrate his current detention is unlawful based on the facts at hand. *Id.* at 2–5.

In *Guillermo*, 791 F. Supp. 3d at 1032–36, the district court held that due process requires non-citizens released by a valid order from an Immigration Judge to receive a hearing before a neutral arbiter either before or immediately after re-detention. The district court further found due process required a pre-deprivation hearing under the facts of that case, where ICE detained the petitioner after learning he had been arrested by police after suffering a mental health episode and released the next day without any charges being filed. *Id.* at 1028–36. *Guillermo* is non-binding authority that is distinguishable from the facts at hand, and does not mandate that a pre-deprivation hearing is required to satisfy due process here.

Unlike the *Guillermo* petitioner, who was released by police after his arrest without being charged with any crime, Petitioner here was charged with felony counts of assault with a deadly weapon, assault by means likely to produce great bodily injury, and criminal threats, and only was released from state custody after posting bail of $150,000. Pet. ¶¶ 32–33. These are serious charges alleging felony offenses that constitute materially changed circumstances under § 241.4(*l*) and *Matter of Sugay*, 17 I & N Dec. at 640, and which support Petitioner's arrest and re-detention without a pre-deprivation hearing. Petitioner's other cited cases are similarly distinguishable and do not establish a pre-deprivation hearing is necessary or appropriate here. *See* Appl. at 23–25.[5]

---

[5] For example, *Moises V.A. v. Wofford*, Case No. 1:25-cv-01419-SKO (HC), 2026 U.S. Dist. LEXIS 18964 (E.D. Cal. Jan. 30, 2026), concerned a petitioner who did not

8

Accordingly, the court DENIES the Application for Petitioner's failure to establish he is in custody in violation of the Constitution or laws or treaties of the United States.  Having found Petitioner fails to establish a likelihood of success on the merits, the court need not address the remaining *Winter* factors.  *See Matsumoto*, 122 F.4th at 804.

## CONCLUSION

For the reasons stated, the Application and Petitioner's request for a temporary restraining order and preliminary injunction ordering his immediate release are DENIED.

IT IS SO ORDERED.

Dated: July 12, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

---

have prior aggravated felony convictions, was not subject to a final order of removal, and who had not been released under § 241.4 when he was re-arrested and detained by ICE.  The other cited cases involved arrests for far less serious offenses than Petitioner has been charged with here, such as driving with a suspended license, driving under the influence, and misdemeanor spousal battery.  *See* Appl. at 24–25.

9