**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| H.R. G.A.,<br>Petitioner,<br>v.<br>JAIME RIOS, et al.,<br>Respondents. | **CASE NO.** 2:26-CV-02449-FLA-CTS<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

On March 6, 2026, Petitioner H.R. G.A.[1] ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.) The Petition alleges that Petitioner is in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") in Adelanto, California, and that he is being held in violation of the Constitution and laws of the United States. (*See generally* FAP.) On March 9, 2026, Petitioner filed an Application for Temporary Restraining Order ("TRO Application"). (ECF No. 6.) Respondents opposed the TRO Application on March 11, 2026 (ECF No.

[1] On March 24, 2026, the Court granted Petitioner's motion to proceed via pseudonym. (ECF Nos. 4, 10.)

8), and Petitioner filed a reply in support of the TRO Application on March 19, 2026 (ECF No. 9).

On March 27, 2026, Petitioner filed a First Amended Petition ("FAP"). (FAP, ECF No. 11.) On July 12, 2026, the then-presiding District Judge in this case denied the TRO Application in an order ("Order"). (Order, ECF No. 13.) In the Order, the District Judge also noted that the parties had not requested that the FAP, filed after briefing on the TRO Application was complete, be considered in connection with the TRO Application. (*Id.* at 2, n.2.[2])

On July 23, 2026, the Court ordered Respondents to answer the FAP and set a briefing schedule. (ECF No. 14.) On July 30, 2026, Respondents filed an "Opposition" to the FAP ("Answer"). (Ans., ECF No. 15.) On August 3, 2026, Petitioner filed his Reply. (Rep., ECF No. 16.) On October 15, 2026, all parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 21, 25.) For the reasons set forth below, the Court GRANTS the Petition in part and ORDERS that Petitioner be released immediately.

## II. BACKGROUND

The Court notes that the Statement of Facts sections of both the Petition and the FAP begin at paragraph 17, and that paragraphs 17 through 36 of those documents do not differ substantively. (*Compare* Pet. ¶¶ 17–36 *with* FAP ¶¶ 17–36.) The Court therefore adopts the following factual background from the District Judge's July 12, 2026 Order:

> Petitioner is a citizen of the Republic of Guatemala ("Guatemala"), who entered the United States in approximately 1986, when he was around 13 years old. Pet. ¶¶ 7, 17. As a teenager, Petitioner dropped out of high school and joined a gang. *Id.* ¶ 18. In 1996,

---

[2] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

> Petitioner was convicted of carjacking, kidnapping, and rape, and sentenced to 31 years and 8 months in state prison. *Id.* ¶ 18. Petitioner was released from prison on October 3, 2022. *Id.* ¶ 19; Dkt. 6-1 ("Sun Decl.") at 41.
>
> That same day, United States Immigration and Customs Enforcement ("ICE") arrested Petitioner and issued a final administrative removal order pursuant to 8 U.S.C. § 1231(a)(6) ("§ 1231(a)(6)"), finding Petitioner was deportable due to his prior commission of an aggravated felony. Pet. ¶ 20. On May 16, 2023, an Immigration Judge granted Petitioner release on bond after determining he was neither a flight risk nor a danger to the community, and he was released from immigration detention the following day. *Id.* ¶ 27; Sun Decl. at 12.

(Order 2) (footnote omitted).

While it does not appear from the record that a separate Order of Supervision ("OSUP") was issued at the time of Petitioner's release on May 16, 2023 (*see id.* at ¶ 27; ECF No. 6-1, at 12, 15), an OSUP was issued on June 11, 2024 (ECF No. 6-1, at 16–21). This June 11, 2024 OSUP stated that Petitioner was being placed under supervision "[b]ecause the agency has not effected [his] deportation or removal during the period prescribed by law" and required him to report in person as directed, which he did until he was re-detained earlier this year. (*Id.* at 16.)

The District Judge's Order also summarized Petitioner's recent request for deferral of removal, arrest for violent crimes, and re-arrest by ICE:

> On August 11, 2025, Petitioner filed a Form I-589, seeking deferral of removal under the Convention Against Torture. *Id.* ¶ 28.
>
> On August 13, 2025, Petitioner was arrested in Los Angeles and charged with two counts of assault with a deadly weapon, one count of making criminal threats, and one count of failure to register as a sex offender (as required under California Penal Code § 290). Pet. ¶ 32. On January 2, 2026, the California state court dismissed

> the failure to register count on the State's motion, and the State amended the criminal complaint to replace one count of assault with a deadly weapon with one count of assault by means likely to produce great bodily injury. *Id.* ¶ 33. Petitioner posted bail and was released from state custody on January 3, 2026. *Id.* On January 16, 2026, Petitioner was arraigned and pleaded not guilty to the three remaining counts charged. *Id.*
>
> On March 6, 2026, Petitioner was re-arrested and detained by ICE when he appeared for a routine check-in appointment at ICE's Los Angeles Field Office. Pet. ¶ 37; Dkt. 8-1. The Notice of Revocation of Release ("Notice of Revocation") states Petitioner's release was revoked, pursuant to 8 C.F.R. § 241.4(*l*) ("§ 241.4(*l*)"), for violation of a condition of release: "Arrested for Robbery and Failing to Register as a Sex Offender." Dkt. 8-1 at 1. The parties dispute whether ICE provided Petitioner with a copy of the Notice of Revocation and informal interview, as required under § 241.4(*l*). Opp'n at 3; Dkt. 8 ("Reply") at 3.

(Order 2–3.) The FAP alleges additional facts regarding events that occurred on and after March 6, 2026, the day Petitioner was re-detained. (FAP ¶¶ 37–43.) The Answer[3] does not dispute any of the FAP's factual allegations. (*See generally* Ans.)

## III. PETITIONER'S CLAIMS

Petitioner challenges his detention on three grounds: (1) violation of the Fifth Amendment Due Process Clause (FAP ¶¶ 83–86); (2) violation of the Fourth Amendment's prohibition against unreasonable seizure of persons (*id.* at ¶¶ 87–90); and (3) violation of the Administrative Procedure Act ("APA"), 5 U.S.C.

---

[3] The Answer attaches Exhibits A and B as follows: (A) ICE Form 71-091, Revocation of Release, dated March 6, 2026; and (B) ICE Form 71-090, Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. §§ 241.4(*l*), 241.13(i), dated March 6, 2026. (Ans., Exs. A–B, ECF Nos. 15-1–15-2.)

§ 706(2)(A), (B), due to a failure to follow the requirements of 8 C.F.R. § 241.4(*l*) (*id.* at ¶¶ 91–94). He seeks the following: declaratory relief; immediate release; an order that Respondents return any and all possessions and documents confiscated upon detention; an order enjoining Respondents from re-detaining Petitioner without notice and a hearing before a neutral arbiter in which Respondents bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community; and attorneys' fees under the Equal Access to Justice Act ("EAJA"). (*Id.* at 49–50.)

## IV. DISCUSSION

The Court first evaluates Petitioner's third claim for relief. Petitioner's third claim was not alleged until the FAP, so would not have been considered by the District Judge in ruling on the TRO Application. (Order 2, n.2.) In his third claim, Petitioner alleges that Respondents did not comply with their own regulations in revoking his release and re-detaining him. (*Id.* at ¶¶ 91–94.) Respondents' brief Answer contests Petitioner's right to relief only on two narrow grounds: one, that the government has the right to detain Petitioner under § 1226(a) and two, that any relief should be limited to a bond hearing. (Ans. 2-3.) Because Respondents fail to meaningfully respond to Petitioner's claims and because Respondents violated Petitioner's procedural due process rights by violating their own regulations, the Court GRANT Petitioner's request to be released from custody.

### A. Petitioner Was Detained Under Section 1231(a) After a Final Order of Removal

Respondent's only argument on the merits in the Answer is a cursory paragraph arguing that "Respondents . . . re-detained Petitioner pursuant to 8 U.S.C. § 1226(a)," and a sentence concluding that Section 1226(a) authorizes Petitioner's detention. (Ans. 3–4.) Respondents are mistaken about the statutory scheme

governing Petitioner's detention, and thus their only argument on the merits is not relevant to the facts before this Court.

Petitioner was subject to a final order of removal and, accordingly, his detention, release, and re-detention are all governed by Section 1231(a). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (noting that Section 1231(a) "governs the detention, release, and removal of individuals 'ordered removed'"). Respondents do not challenge the Petitioner's recitation of facts, including that Petitioner had received a final order of removal. Indeed, before Respondents filed their Answer, this Court had already identified that the IJ had issued Petitioner "a final administrative removal order pursuant to 8 U.S.C. § 1231(a)(6)." (Order 2.)

The correct statutory scheme is important because once a noncitizen subject to a final order of removal has been released from custody, specific regulations govern the revocation of that release. Section 1231(a) authorizes detention during a 90-day "removal period," 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A), and "[i]ndividuals released after the removal period remain subject to terms of supervision." *Johnson*, 596 U.S. at 579. The revocation of that release is governed by 8 C.F.R. §§ 241.4(*l*) and 241.13(i), which require that ICE follow certain processes in order to re-detain a non-citizen previously released after the removal period. One of the Exhibits attached to the Answer specifies that Petitioner's release was revoked under 8 C.F.R. § 241.4(*l*) ("Section 241.4(*l*)"). (Ans. Ex. A.) Despite this Exhibit, the Answer, which does not acknowledge the correct statute or regulations, fails to address Petitioner's arguments that ICE violated this regulation.

Respondents did not make any other arguments in opposition to the merits of the Petition. It is not the role of the courts to generate arguments for counseled parties. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation" meaning that "in both civil and criminal cases, in the first instance and on

appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." (citations and quotation marks omitted)). Indeed, "as a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* (alteration in original). The Supreme Court recently reminded the lower courts that they are "essentially passive instruments of government" and thus "points not argued will not be considered." *Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 342 (2026) (citations and quotation marks omitted). On the absence of any responsive opposition alone, this Court may grant the Petition.

**B. ICE Violated Its Own Regulations**

The Petition may also be granted because ICE violated its own regulations in re-detaining Petitioner. Once ICE decides to release an alien on an OSUP, its ability to re-detain that individual "is constrained by its own regulations." *Manivong v. Bondi*, No. 25-cv-6747-JFW-KES, 2025 WL 3211455, at *5 (C.D. Cal. Sep. 3, 2025) (citation omitted). Compliance with these regulations has a constitutional dimension, because a noncitizen released from custody on an OSUP has a liberty interest that is protected under the Fifth Amendment's Due Process Clause. *See Trifonov v. Noem*, No. 5:25-CV-03460-DOC-JDE, 2025 WL 3763371, at *2 (C.D. Cal. Dec. 22, 2025). "Numerous district courts, including courts in the Ninth Circuit, have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) (internal quotations omitted).

As discussed above, revoking the release of a non-citizen subject to a final order of removal is governed by 8 C.F.R. §§ 241.4(*l*) and 241.13(i), "which require that 'upon revocation' the alien 'be notified of the reasons for revocation of his or

her release' and given 'an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.'" *Trifonov*, 2025 WL 3763371, at *2 (quoting 8 C.F.R. §§ 241.13(i)(3) and 241.4(*l*)). "Both 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4 were intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Id.* (quoting *Constantinovici*, 806 F. Supp. 3d at 1163 (internal quotations omitted)). Thus:

> When ICE makes the determination that a noncitizen's OSUP should be revoked, the regulations require that certain procedural requirements be followed. The noncitizen is entitled to notice of the reasons for revocation of release and an "informal interview promptly after his or her return to [ ] custody to afford [him or her] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3); *see Hoac*, 2025 WL 1993771, at *3. The two provisions differ in that § 241.4(l)(2) grants authority to revoke release to only the "Executive Associate Commissioner" or a "district director," when revocation is in the public interest and circumstances do not reasonably permit referral of the case to the "Executive Associate Commissioner"; whereas § 241.13 "does not limit the authority to revoke release to certain designated officials." *Pogosyan v. Bondi*, 2026 WL 544717, at *3 (C.D. Cal. Feb. 23, 2026); *Gazazyan v. Bondi*, 2025 WL 3898484, at *5 (C.D. Cal. Nov. 7, 2025).

*Tanashyan v. Mullin*, No. 5:26-CV-04455-SP, 2026 WL 2538250, at *4 (C.D. Cal. Aug. 27, 2026).

Here, Petitioner was arrested and detained under 8 U.S.C. § 1231(a)(6) on October 3, 2022, after issuance of a Final Administrative Removal Order. (FAP ¶ 20.) More than six months later, on May 16, 2023, Petitioner was released on bond of $3,500 pursuant to an order by an immigration judge ("IJ"). (*Id.* at ¶ 27;

ECF No. 6-1, at 12.) An OSUP issued on June 11, 2024, confirms that, consistent with Section 1231(a), Petitioner was placed under supervision "[b]ecause the agency ha[d] not effected [his] deportation or removal during the period prescribed by law." (ECF No. 6-1, at 16.)[4] The June 11, 2024 OSUP required Petitioner to report in person as directed, which he did until he was re-detained earlier this year. (*Id.*)

The Notice of Revocation of Release for Petitioner's March 6, 2026 re-detention makes clear that ICE revoked Petitioner's release "pursuant to 8 C.F.R. § 241.4(*l*)." (Ans. Ex. A, at 2.) Petitioner contends that Respondents did not follow the requirements of Section 241.4(*l*) in revoking his release, both because the person who revoked Petitioner's release was not authorized to do so and by failing to provide Petitioner with an opportunity to respond to the reasons for his revocation at a prompt, informal interview.[5] (FAP ¶¶ 80–81.) Specifically, with respect to his first contention, Petitioner points out that the signatory on the Notice of Revocation of Release form is one "N. McKenna," whose title is given as "SDDO." (Ans. Ex. A. 3.) Other evidence in the record suggests that this is

---

[4] The Court notes that, after the June 11, 2024 OSUP was issued, the Ninth Circuit remanded Petitioner's reasonable fear proceedings. (FAP ¶ 28.) In September 2024, an IJ vacated the negative reasonable fear decision and placed Petitioner in withholding-only proceedings. (*Id.*) The detention of individuals subject to a removal order who have ongoing withholding-only proceedings is governed by 8 U.S.C. § 1231(a). *Padilla-Ramirez v. Bible*, 882 F.3d 826, 832 (9th Cir. 2017). Thus, though Petitioner's removal was still being litigated at the time he was re-detained, those ongoing proceedings did not change the statute that governed his re-detention.

[5] Petitioner also argues, in the alternative, that these regulations do not govern his situation because, as he was previously ordered released from custody not by ICE officers acting pursuant to these regulations, but by an IJ acting under a court injunction, the regulations do not permit any ICE officers at all to revoke his release. (FAP ¶78.) However, as relief is warranted because Respondents did not follow their own regulations, there is no need to reach the question of whether even perfect compliance with the regulations would have been insufficient here.

Supervisory Detention and Deportation Officer Nelly McKenna. (ECF No. 6-1, at 22.) Petitioner argues that a Supervisory Detention and Deportation Officer is not an "Executive Associate Commissioner" or a "district director," and thus is not authorized to revoke release under Section 241.4(*l*). (FAP ¶ 81.) In support of this assertion, Petitioner points out that the Notice of Revocation of Release form itself states, just below the signature block for the "Authorized Official," that "8 C.F.R. § 241.4 revocation must be EAD or FOD where there is a public interest to do so and referral to EAD not reasonable; 241.13 may be by RMD." (Ans. Ex. A 3.)

Courts in this District have held that the specific regulation limiting authority to revoke release "is not meaningless. Entrusting the revocation decision to high-ranking officers with the agency ensures that the discretionary decision to revoke supervision is well-founded." *Jacome v. Marin*, No. 5:26-cv-02149-MRA-BFM (C.D. Cal. May 29, 2026), ECF No. 30, at 6, *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 121958, *2 (C.D. Cal. June 2, 2026); *see also Tanashyan*, 2026 WL 2538250, at *5 (granting habeas relief and ordering immediate release based on the respondents' failure to follow their own regulations in revoking the petitioner's release, because Notice of Revocation of Release form was signed by an assistant field office director, who was not authorized to revoke release); *Gazazyan*, 2025 WL 3898484, at *4 (finding "[d]ispositive" in granting the petitioner's request for a TRO the fact "that Respondents did not properly give [the petitioner] notice because the ICE official who gave him the Notice did not have the authority to do so under 8 C.F.R. § 241.4(*l*)(2)").[6]

Further, as Petitioner cites in the FAP, several cases in this district have questioned whether the specific Supervisory Detention and Deportation Officer in

---

[6] The Court also notes that compliance with this regulation would not have imposed a particularly significant burden on Respondents, who had already been put on notice by this district, months before Petitioner was re-detained, that Supervisory Detention and Deportation Officers did not have the authority to revoke release under Section 241.4(*l*). *Gazazyan*, 2025 WL 3898484, at *6.

this case, Nelly McKenna, had the regulatory authority to revoke release under Section 241.4(*l*). (FAP ¶ 81.) *See M.P.P.P. v. Santacruz*, No. 2:26-CV-05246-RAO, 2026 WL 1601908, at *4 (C.D. Cal. June 1, 2026) ("Here, the Notice of Revocation notice was signed by 'N. McKenna,' an "SDDO," or Supervisory Detention and Deportation Officer. . . . A Supervisory Detention and Deportation Officer is not one of the officials identified in the regulation."); *Zakaryan v. Bondi*, No. EDCV 26-0384 JGB (SKX), 2026 WL 713014, at *5 (C.D. Cal. Feb. 3, 2026) ("[I]t is not clear that Supervisory Detention and Deportation Officer N. McKenna . . . holds the authority to revoke Petitioner's order of supervision."); *Gazazyan v. Bondi*, No. 5:25-CV-02599-SRM-DTB, 2025 WL 3898484, at *6 (C.D. Cal. Nov. 7, 2025) ("[T]here is no evidence . . . to show that McKenna's role as the 'Supervisory Detention Deportation Officer' equates to that of" one of the individuals authorized by the regulations.); *see also Tiraturian v. Bondi*, 817 F. Supp. 3d 883, 887 (C.D. Cal. 2025) (holding that an unnamed SDDO was not authorized to revoke an OSUP); *Cruz v. Rios*, No. EDCV 26-01374-MWF, 2026 WL 973367, at *3 (C.D. Cal. Apr. 8, 2026) ("[A] 'Supervisory Detention & Deportation Officer,' . . . is not one of the officials identified in the regulation.").

To the extent that potential arguments exist that Respondents could have raised in opposition, they have failed to raise them in this case.[7] Notably, Respondents do not argue that Section 241.4(*l*)(2)'s restriction on which officials are authorized to revoke release does not apply to Petitioner's circumstances. Nor do Respondents argue that a Supervisory Detention and Deportation Officer is

---

[7] Though they did not do so here, Respondents have raised such arguments in other, similar cases. *See, e.g.*, *Tanashyan*, 2026 WL 2538250, at *5 ("Respondents in fact do not argue that § 241.4(*l*)(2) grants an assistant field office director such authority. Instead, respondents argue at length that because other provisions of § 241.4, namely §§ 241.4(c)(4) and 241.4(h)(5), have broad scopes of delegation (including to 'field office staff'), then § 241.4(l)(2)(iii) must similarly have the same broad delegation scope.").

either an "Executive Associate Commissioner" or a "district director."[8] Nor have they provided any evidence that the requirements for revocation by a district director were satisfied here, as a district director may only revoke release "when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(*l*).[9] Nor do they argue that the delegation provision in 8 C.F.R. § 241.4(c)(4)[10] applies to Section 241.4(*l*). Nor, even if that

---

[8] The regulation's reference to these titles is confusing, as these were titles used by the old Immigration and Naturalization Service ("INS"), prior to its consolidation into the Department of Homeland Security more than 20 years ago. *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025); *Gazazyan*, 2025 WL 3898484, at *5. In light of 8 C.F.R. § 1.2, which "was promulgated to define previous INS terms, phrases, and position titles. . . . 'Commissioner' refers to the 'Director of U.S. Citizenship and Immigration Services, the Commissioner of U.S. Customs and Border Protection, and the Director of U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears,'" and "'[d]istrict director' now means 'asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge.'" *Gazazyan*, 2025 WL 3898484, at *5 (quoting 8 C.F.R. § 1.2). Thus, the Notice of Revocation of Release form's instruction that only an "EAD" or an "FOD" have authority to revoke release under Section 241.4 likely refers to an "Executive Associate Director" and either "Field Operations Director" or "Field Office Director." Regardless, Respondents have not argued that any of these terms should be considered the equivalent of an "SDDO."

[9] *See Ndoye v. Joyce*, No. 26-CV-1219 (VSB), 2026 WL 765635, at *4 (S.D.N.Y. Mar. 17, 2026) (holding that, without evidence that the requisite finding had been made, revocation of release by a district director would mean that "the agency has again disregarded the explicit text of its own regulation and violated Petitioner's due process rights").

[10] "Additional delegation of authority. All references to the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, and the district director in this section shall be deemed to include any person or persons (including a committee) designated in writing by the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, or the district director to exercise powers under this section." 8 C.F.R. § 241.4(c)(4).

delegation provision does permit delegation of the revocation decision,[11] have Respondents provided any "writing" in which either "N. McKenna" in particular or Supervisory Detention and Deportation Officers in general have been designated *to exercise the power to revoke release* under Section 241.4(*l*). *See Ceesay*, 781 F. Supp. 3d at 161 (finding that written delegation of authority that delegated enumerated "powers 'relating to warrants of removal, reinstatement of removal, self-removal, and release of [noncitizens] from detention'" did not delegate the specific authority to revoke release).

It therefore appears that Respondents have conceded that the official who revoked Petitioner's release did not have the regulatory authority to do so. This is consistent with the conclusion reached by a number of courts over the last year. *E.g.*, *Tanashyan*, 2026 WL 2538250, at *4–5; *M.P.P.P.*, 2026 WL 1601908, at *4; *Cruz*, 2026 WL 973367, at *3; *Burunsuzyan v. Noem*, No. 5:26-CV-00049-RGK-AGR, 2026 WL 246067, at *4 (C.D. Cal. Jan. 27, 2026); *Gazazyan*, 2025 WL 3898484, at *6; *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886, at *3 (D. Md. Oct. 7, 2025).

Therefore, based on Respondents' failure to follow their own regulations—which they have conceded by failing to offer any evidence or argument to suggest that they did, in fact, comply with those regulations—habeas relief is warranted.

---

[11] At least one court has held that it does not. While noting that 8 C.F.R. § 241.4(c)(4) "delegate[d] custody determinations to certain officials," the *Gazazyan* court found that "nothing in the regulatory language suggests this delegation of authority equally applies to determinations pertaining to a noncitizen's revocation of supervised release. In fact, Section 241.4(l)(2)—the provision relied upon by Respondents to revoke Gazazyan's supervised release—expressly identifies who has the authority to make this determination: the "Executive Associate Commissioner" and a "district director." 8 C.F.R. § 241.4(l)(2). And unlike Sections 241.4(c)(4) and (h)(5), Section 241.4(l)(2)[] contains no language that gives the Executive Associate Commissioner or a district director the authority to further delegate these revocation determinations to other officials." 2025 WL 3898484, at *7.

Petitioner's re-detention was unlawful, and he should thus be immediately released from custody. *Id.*; *M.P.P.P.*, 2026 WL 1601908, at *4 (finding that the petitioner's immediate release was "required to meaningfully remedy the regulatory violations concerning the revocation of her release" and noting that, while "Respondents urge that even if Petitioner substantiates a violation of a particular regulatory procedure here, the appropriate remedy would be to rectify that specific procedural issue, rather than order Petitioner's release," "courts confronted with similar facts have concluded that re-detention is unlawful and have ordered release"); *Cruz*, 2026 WL 973367, at *4 (ordering immediate release despite fact that the respondents had "urge[d] that 'even if there were some violation of a particular regulatory procedure here . . . the appropriate remedy would be to rectify that specific procedural issue'").

The FAP also argues that Respondents failed to comply with Section 241.4(*l*) in a second way, in that Petitioner was not provided with an opportunity to respond to the reasons for his revocation at a prompt, informal interview. (FAP ¶ 80.) If Petitioner here was provided with any interview, it occurred on the day of his re-detention. (*Id.* at ¶¶ 37–41; Ans. Ex. B.) Courts have raised questions about the adequacy of an informal interview conducted on the same day that release is revoked. *See M.P.P.P.*, 2026 WL 1601908, at *3 (noting that the "the informal interview occurred on the same day that Respondents served the Notice of Revocation and arrested Petitioner" and that "[c]ourts considering similar circumstances have raised concerns with statutory compliance and due process where the government conducts the informal interview immediately upon issuing a notice of revocation, thereby 'essentially bar[ring] the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful.'" (quoting *Kiwana v. LaRose*, No. CV 25-3678-JES (SBC), 2026 WL 102661, at *6 (S.D. Cal. Jan. 14, 2026)); *Velasquez Jimenez v. Mullin*, No. EDCV 26-356-AGR, 2026 WL 1455385, at *6 (C.D. Cal. May 18, 2026)

("Courts have found that, 'when the informal interview is conducted on the same day the Notice is issued, the Government essentially bars the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful.'" (quoting *Kiwana*, 2026 WL 102661, at *6)). Here, there appears to be a factual dispute regarding whether any informal interview took place at all, as well as a dispute regarding the adequacy of such an interview of an individual with "mental health conditions and cognitive deficits" conducted outside the presence of his counsel despite his repeated requests to contact his attorney. (FAP ¶¶41; Ans. 4; Ans. Exs. A–B; Reply 8–9.) *See also Ovikian v. Noem*, No. 5:26-CV-00158-WLH-E, 2026 WL 242700, at *5 (C.D. Cal. Jan. 23, 2026) (finding that no informal interview was conducted when the petitioner alleged that he did not receive such an interview and "Respondents merely provided a copy of a form purporting to document that an informal interview was conducted pursuant to 8 C.F.R. §§ 241.4(l), 241.13(i)" which "[b]y itself [was] insufficient"). However, there is no need to reach these questions, as Respondents' concession that the official who revoked Petitioner's release did not have the regulatory authority to do so is dispositive. *Gazazyan*, 2025 WL 3898484, at *4.

Finally, the Court notes that Petitioner has also argued that, under the Fifth Amendment's Due Process Clause, more process was due him at the time of his re-detention than that provided in the regulations, and that he should have received a hearing *before* he was re-detained. (FAP ¶¶ 44–76.) However, as Respondents did not provide even the process that their own regulations required, there is no need to reach the question of whether any additional process was due. Likewise, as the Court orders that Petitioner be released from custody due to Respondents' failure to comply with the regulations in revoking his previous release, there is no need to address Petitioner's Fourth Amendment claim. Petitioner may seek reasonable costs and attorney fees after judgment has been entered in this matter, as provided in this Court's Local Rules and any statute authorizing such an award.

While Respondents are not prohibited from re-detaining Petitioner in the future, they may only do so if they comply with the requirements of federal law and all applicable regulations, including 8 C.F.R. §§ 241.4(*l*) and 241.13(i).

## V. CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. Judgment shall be entered GRANTING the First Amended Petition's Third Cause of Action (FAP ¶¶ 91–94) and dismissing the remaining claims without prejudice in light of the relief awarded on the Third Cause of Action;
2. Respondents MUST RELEASE **Petitioner H.R. G.A. (A 076-697-365)** from custody within 24 hours from the date of entry of this order, under the same conditions that were in place prior to his re-detention;
3. Respondents MUST RETURN to Petitioner any and all possessions and documents confiscated upon detention, including but not limited to any identity documents, employment authorization documents, medical insurance cards, and money; and
4. Respondents are enjoined from re-detaining Petitioner without full compliance with federal law and all applicable regulations, including 8 C.F.R. §§ 241.4(*l*) and 241.13(i).

DATED: October 15, 2026

CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE